UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>VANTAGE YACHT CLUB, LLC,<br><br>Defendant. | No. 14 C 7360<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Markel American Insurance Company seeks a declaratory judgment that it does not have a duty to defend its insured, Vantage Yacht Club, LLC, in an underlying state court action. Markel has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. R. 45. For the following reasons, Markel's motion is granted.

**Subject Matter Jurisdiction &
Governing Law**

The Court has subject matter jurisdiction over this action under "admiralty or maritime jurisdiction," 28 U.S.C. § 1333(1), because the claim involves a "standard marine insurance policy." *See Cont'l Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 517 (7th Cir. 1999); *see also St. Paul Ins. Co. of Ill. v. Great Lakes Turnings, Ltd.*, 829 F. Supp. 982, 984 (N.D. Ill. 1993) ("It is undisputed that marine contracts, including marine insurance contracts, fall under federal admiralty jurisdiction in Article 3, Section 2 of the United States Constitution.").

However, "from the fact that this is an admiralty case it does not automatically follow that admiralty law, a body of judge-made legal doctrines tailored to maritime disputes, should govern the substantive issues." *Cont'l Cas.*, 189 F.3d at 519. "A federal court sitting in admiralty can . . . borrow the law of a state or a foreign country to resolve a dispute that had come into court under the admiralty jurisdiction, especially when dealing with a subject traditionally regulated by the states, such as insurance (including marine insurance)." *Id.* "[A] federal court before considering whether to borrow a state law to resolve an admiralty dispute must ask whether there is admiralty law on the issue and if so it must apply that law and if not it must decide whether the interest in uniformity should trump the state's regulatory interest and expertise." *Id.*

Neither party argues that there is admiralty law that governs interpretation of the scope of a duty to defend under a marine insurance policy. District courts in this circuit have applied state law to such disputes. *See Cont'l Ins. Co. v. George J. Beemsterboer, Inc.*, 2015 WL 8346997, at *5-6 (N.D. Ind. Dec. 8, 2015); *Egan Marine Corp. v. Great Am. Ins. Co. of N.Y.,* 531 F. Supp. 2d 949, 953 (N.D. Ill. 2007); *Nat'l-Ben Franklin Ins. Co. of Ill. v. Levernier*, 280 F. Supp. 2d 851, 859 (E.D. Wis. 2003). Based on this authority, and considering the lack of a dispute between the parties on this issue, the Court will apply Illinois law to determine whether the claims against Vantage fall within the scope of Markel's duty to defend.[1]

---

[1] The parties agree that Illinois law applies, and the Court sees no reason to question that agreement.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 525 (7th Cir. 2013) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993)).

**Background**

Vantage is a boat rental company, "engaged in the commercial trade of taking passengers for hire on pleasure cruises" from a dock located on the Chicago River. R. 49 ¶¶ 4, 6, 11. David Bagger was employed by Vantage during the relevant time

period and worked at the dock processing boat rentals and maintaining the boats. *Id.* ¶¶ 8-9. Vantage owns a boat that is insured by Markel. *Id.* ¶ 2.

On August 24, 2012, Brian Garland and a group of friends came to the dock expecting to rent a boat. *Id.* ¶¶ 11-12. Garland and his friends were not able to pay to rent the boat, so as a consolation, Bagger took the group on a boat ride on the river for about 30 minutes himself, using the boat insured by Markel. *Id.* ¶¶ 13-14. Bagger is not a licensed boat captain or pilot. *Id.* ¶ 34. Neither Garland nor any of his friends signed a rental agreement to use the boat. *Id.* ¶¶ 32-33. In the underlying state court action against Vantage, the plaintiffs allege that "after" the boat ride, R. 45-12 at 3 (¶ 8), Bagger "dock[ed] the boat," *id.*, and then Garland fell into the water and drowned. *Id.* at 4 (¶¶ 11-12).

Pursuant to the insurance policy covering the boat, Markel is currently paying for Vantage's defense against claims made by Garland's estate in the underlying state court action. Garland's estate alleges that Garland's death was proximately caused by the following "acts and/or omissions" committed by Vantage and Bagger:

> a. Failed to properly maintain the boat dock;
> b. Failed to ensure the boat dock was in a safe condition for those lawfully on the premises;
> c. Failed to inspect the boat deck to ensure it was in a safe condition;
> d. Failed to adequately warn individuals, including BRIAN GARLAND, that the boat dock was dangerous or otherwise hazardous;
> e. Failed to provide adequate railing along the boat dock;
> f. Failed to otherwise have safeguards along the boat dock;

4

g. Failed to provide any adequate rope, ladder, or other grab device for persons falling into the water to extricate themselves; and
h. Was otherwise careless and/or negligent in the ownership, maintenance and use of the premises.

*Id.* at 3-4 (¶ 10). In the counts of the complaint against Bagger and Vantage, Garland's estate does not expressly allege how Garland fell into the water. But when making allegations against the owner of the dock (an entity known as MW, which is also a defendant in the state action), Garland's estate expressly alleges that Garland "was caused to fall into the water because of the unsafe dock." R. 45-12 at 7 (§ IV).

The insurance policy Vantage has with Markel covers liabilities arising from "ownership, maintenance, or use of" the boat at issue. R. 45-1 at 7. The policy also includes the following warranties, exclusions, and definitions relevant to this motion:

> **[Warranty] B. CONTINUING WARRANTY OF SEAWORTHINESS:** [Vantage] warrant[s] that [Vantage's] Insured Property shall be maintained in a Seaworthy condition during the entire Policy period. Any breach of this continuing warranty to exercise reasonable care to maintain the Insured Property in a Seaworthy condition will render coverage void for any damage or loss claimed under this Policy where such condition or conditions of unseaworthiness directly or indirectly caused or contributed to any damage or loss for which [Vantage] makes claim.
>
> **[Warranty] C. COMPLIANCE WITH REGULATION:** [Vantage] warrant[s] that [it is] in compliance with all federal, state or local regulations concerning [Vantage's] operations; and that [Vantage] possess any and all federal, state or local documentation, permits and licenses required for the Insured's Property's trade or use.

5

> **[Warranty] D. RENTAL CONTRACT:** [Vantage] warrant[s] that a written rental contract, which has been submitted to and approved by [Markel], is executed between [Vantage] and any person or organization who rents, hires or leases the Insured Watercraft from [Vantage] and any person or organization who uses an Insured Watercraft, with or without an exchange of consideration or payment for use of [Vantage's] Watercraft. A copy of all executed rental agreements will be held on file for no less than three years after the termination of the contract.
>
> **SECTION IV. LIABILITY COVERAGE**
> **Exclusions**
> [Markel] will not pay any amount for: . . . .
> **K.** Bodily injury or property damage caused by the use of [Vantage's] watercraft while it is being used to carry passengers for hire. . . .
> **O.** Bodily injury or property damage caused by [Vantage] when not in the course of [Vantage's] rental business operation, and/or after your normal business hours, or for any person other than an Insured as defined in this endorsement, whom [Vantage has] deemed to have given permission to operate the Insured Property.
>
> **SECTION II. – DEFINITIONS (Continued)**
> . . . .
> "Seaworthy" and "Seaworthiness applies not only to the physical condition of the Insured Property, but to all its parts, equipment and gear and includes the assignment of a suitable captain and crew.

R. 45-1 at 7, 21-22. On the basis of these provisions, Markel seeks a declaratory judgment that it does not have a duty to defend Vantage in the underlying state action because (1) the underlying incident is outside the scope of the policy's coverage, (2) Vantage breached certain policy warranties, and (3) Vantage's conduct leading up to Garland's death falls within certain policy exclusions.

6

## Analysis

**I. Scope of Coverage**

Markel argues that it does not have a duty to defend Vantage in the state court action because the scope of the insurance policy does not cover the liabilities at issue in that case. "An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage." *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 719 (7th Cir. 2015). "An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaint that the allegations fail to state facts which bring the case even potentially within the policy's coverage." *Id.* (emphasis in original). "In determining whether [an insurer] has a duty to defend [its insured], [courts] may only consider the allegations in the state complaint in concert with the provisions of the [p]olicy." *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 525 (7th Cir. 2013) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (1991)). "The underlying complaint and insurance policy must be liberally construed in favor of the insured." *Panfil*, 799 F.3d at 719 (citing *U.S. Fid. & Guar.*, 578 N.E.2d at 930). But "the burden is on the insured to prove that its claim falls within the coverage of an insurance policy." *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009).

Here, the policy covers liabilities that arise out of "ownership, maintenance, or use of" the boat, but the underlying complaint concerns an accident that is alleged to have occurred on the dock. The complaint alleges that Garland fell into

7

the water "after" the boat ride and after Bagger docked the boat. The complaint also alleges that Vantage and Bagger caused Garland's death because they failed to take certain safety precautions with respect to the "boat dock." It is clear from the face of the complaint that Garland's estate alleges that some unsafe condition of the dock led to Garland's death. By contrast, there is no indication in the complaint that Garland's estate alleges that the boat itself was a cause of Garland's death. Absent such allegations, the incident at issue in the state court action brought by Garland's estate is not within the scope of the policy's coverage.

Vantage argues that it is "generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation," R. 48 at 3 (quoting *Allstate Ins. Co. v. Kovar*, 842 N.E.2d 1268, 1275 (Ill. App. Ct. 2d Dist. 2006)), and that the "boat has not been ruled out as a player in the incident." R. 48 at 3. Vantage supports this contention by arguing that the state complaint's use of the word "premises" potentially includes the boat. R. 48 at 7. This is an unreasonable reading of the complaint. The state complaint uses the word "premises" in the following contexts:

> 8. That at the aforementioned time and place, and after said boat cruise, Defendant DAVID BAGGER did dock the boat, at a portion of said dock which was possessed and maintained by the Defendant Vantage.
>
> 9. That Defendant VANTAGE YACHT CLUB, LLC, individually and through its employee, servant, and/or agent, Defendant DAVID BAGGER, then and there had a duty to operate, manage, maintain and/or control said ***dock/premises*** with ordinary and reasonable care so as to not cause injury to others, including BRIAN GARLAND.

8

10. That at the aforesaid time and place, not withstanding the aforementioned duty, Defendant VANTAGE YACHT CLUB, LLC, individually and/or through its employee, servant, and/or agent, Defendant DAVID BAGGER, then and there carelessly and negligently did, or failed to do one or more of the following acts and/or omissions:

a. Failed to properly maintain the boat dock;
b. Failed to ensure the boat dock was in a safe condition for those lawfully on the *premises*;
c. Failed to inspect the boat deck to ensure it was in a safe condition;
d. Failed to adequately warn individuals, including BRIAN GARLAND, that the boat dock was dangerous or otherwise hazardous;
e. Failed to provide adequate railing along the boat dock;
f. Failed to otherwise have safeguards along the boat dock;
g. Failed to provide any adequate rope, ladder, or other grab device for persons falling into the water to extricate themselves; and
h. Was otherwise careless and/or negligent in the ownership, maintenance and use of the *premises*.

\* \* \* \*

3. That on or about August 24, 2012 . . . Defendant MW-CPAG MARINA HOLDINGS, LLC and MW-MARINA LLC, Illinois limited liability companies, (hereinafter, "MW") . . . owned, operated, maintained and controlled a boat dock . . . .

4. That on or about August 24, 2012 . . . BRIAN GARLAND, deceased, was lawfully on the aforesaid *premises*.

5. That it then and there became the duty of Defendant MW, individually and/or d/b/a KINGSBURY YACHT CLUB, owned, operated, to maintain the *Premises*, including the boat dock, in a reasonably safe

9

> condition for persons lawfully on the ***Premises***, including BRIAN GARLAND.
>
> 6. That on or about August 24, 2012, as BRIAN GARLAND was lawfully on the ***premises***, and as a direct and proximate result of the negligence of Defendant MW, individually and/or d/b/a KINGSBURY YACHT CLUB, owned, operated, he was caused to fall into the water because of the unsafe dock.

R. 45-12 at 3-4, 7. Clearly, "premises" refers to the "dock" and not the "boat." In paragraph 8, the state complaint alleges that Bagger "did dock the boat, at a portion of said dock." Then in the next paragraph the state complaint alleges that Vantage and Bagger had a duty with respect to "said dock/premises." The use of the word "said" prior to the words "dock" and "dock/premises" indicates that the "dock" is the subject of both paragraphs 8 and 9, and that the subject "dock" is distinct from the boat. The word "premises" is included as an alternative reference to the "dock." There is nothing in these two paragraphs of the state complaint to indicate that the word "premises" is intended to refer to the boat.

This use of the word "premises" is continued in paragraph 10. In that paragraph Garland's estate alleges that Vantage and Bagger breached a number of duties they had with respect to the "boat dock." Thus, the use of the word "premises" in paragraph 10 also can only plausibly refer to the "boat dock," as there is no other possible subject in paragraph 10.[2]

---

[2] Markel points out that in paragraph 10(c), the state complaint references the "boat deck" instead of the "boat dock." This is clearly a typographical error since the word "deck" does not appear anywhere else in the state complaint. Additionally, Vantage does not argue that the term "boat deck" refers to the boat. In fact, Vantage's argument implies that the "boat dock/boat deck" is *not* an "area on the boat." *See* R.

10

The state complaint's allegations with respect to the owner of the dock—an entity known as "MW"—further demonstrate that Garland's estate uses the word "premises" to refer to the "dock." Paragraph 3 alleges that MW "owned" and "maintained" a "boat dock." The next paragraph alleges that Garland was "on the aforesaid premises." The only possible reference for "premises" in paragraph 4 is the "boat dock" that was the subject of paragraph 3. Then in paragraph 5, the state complaint alleges that MW "owned" and "maintained" the "premises," using identical language to that used to allege MW's ownership and maintenance of the "boat dock." This also shows that "premises" is used in the state complaint to refer to the "boat dock," and not the boat.

And lastly, paragraph 6 alleges that Garland was on the "premises" when he fell into the water because of "the unsafe dock." This again implies that "the unsafe dock" was the "premises" Garland was "on" when he fell into the water.

The foregoing analysis of the complaint's language shows that Garland's estate does not allege that "use" or "maintenance" of the boat itself was a proximate cause of Garland's death. Since Garland's estate does not make any such allegations, the estate's claims against Vantage do not fall within the scope of Vantage's insurance policy with Markel, and Markel does not have a duty to defend Vantage in the underlying state action.[3]

---

48 at 8 (juxtaposing "the area . . . on the boat dock/boat deck" and "the area on the boat").

[3] Vantage also hypothesizes that "Garland fell of the dock and hit his head on a portion of the boat, causing him to become unconscious and quickening his death." R. 48 at 5. There are no such allegations in the underlying complaint. Moreover,

11

**II. Policy Warranties**

Markel also argues that even if the claims in the underlying state action fell within the scope of the policy Vantage has with Markel, there are a number of exclusions in the policy that destroy Markel's duty to defend. If the "insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies." *Addison,* 905 N.E.2d at 752. "When an insurer denies a duty to defend based on an exclusionary clause, its application must be clear and free from doubt." *Panfil*, 799 F.3d at 719; *see also Atl. Mut. Ins. Co. v. Am. Acad. of Orthopaedic Surgeons,* 734 N.E.2d 50, 56 (Ill. 2000).

Markel relies on admissions Vantage made in its response to Markel's statement of material facts pursuant to Local Rule 56.1 to argue that Vantage breached certain warranties in the insurance policy. Although the Court generally may only compare the allegations of the complaint to the insurance policy at issue to determine the duty to defend, the Supreme Court of Illinois has clarified that courts "may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend." *Pekin Ins. Co. v. Wilson,* 930 N.E.2d 1011, 1020 (Ill. 2010); *see also Hartford Fire Ins. Co. v. Thermos L.L.C.*, 2015 WL 7293509, at *8 (N.D. Ill. Nov. 19, 2015); *Malaker v. Cincinnati Ins. Co.*, 2011 WL 1337095, at *7-8 (N.D. Ill. Apr. 7, 2011). "The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit." *Pekin*, 930 N.E.2d at 1019 (quoting *Fidelity & Cas. Co. of N.Y.*

---

Vantage does not explain how this hypothetical circumstance would arise out of "ownership, maintenance, or use of" the boat.

*v. Envirodyne Engineers, Inc.*, 461 N.E.2d 471, 474 (Ill. App. Ct. 1st Dist. 1983)). "If a crucial issue will not be determined . . . the party seeking a declaration of rights [may] present evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding." *Pekin*, 930 N.E.2d at 1020 (quoting *Envirodyne*, 461 N.E.2d at 474)). On this authority, the Court considers Vantage's responses to Markel's statement of material facts.

Markel argues that the policy it has with Vantage required Vantage to ensure that (1) the boat was used pursuant to a signed rental agreement (Warranty D); (2) the boat was "seaworthy" in that it was assigned a suitable captain and crew (Warranty B); and (3) that the boat's captain be properly licensed (Warranty C). Vantage admits that (1) it "has no rental agreement signed by Mr. Garland or anyone in his party"; and (2) Bagger "is not a licensed boat master, captain, or pilot." R. 49 ¶¶ 32-34. The Court finds that these admissions are sufficient evidence to find that that Vantage breached the warranties at issue.

Markel argues further that Vantage's breaches of the warranties at issue serve to void the policy and relieve Markel's duty to defend Vantage in the underlying state action, because federal admiralty law requires "strict compliance" with "warranties in marine insurance policies," R. 47 at 3, such that "no showing of causation of loss is required to render the [w]arranty's suspension of coverage effective." *Id.* at 4 (quoting *Yu v. Albany Ins. Co.*, 281 F.3d 803, 808 (9th Cir. 2002); *see also Lloyd's of London v. Pagan-Sanchez*, 539 F.3d 19, 21 (7th Cir. 2008) ("The prevailing view, both in federal law and state maritime insurance law, is that a

breach of a warranty will excuse the maritime insurer from payment regardless of any causal connection to the loss.")). The problem with Markel's argument is that this admiralty doctrine of strict compliance—also known by the Latin phrase *uberrimae fidei*, or "utmost good faith"—also requires that the warranty at issue concern "facts *material* to an insurance risk." *Markel Am. Ins. Co. v. Dolan*, 2012 WL 5906401, at *6 (N.D. Ill. Nov. 26, 2012) (citing *AGF Aviation & Trans. v. Cassin*, 544 F.3d 255, 257 (3d Cir. 2008)) (emphasis added); *see also St. Paul Ins. Co. of Ill. v. Great Lakes Turnings, Ltd.*, 829 F. Supp. 982, 985 (N.D. Ill. 1993) ("the federal standard [provides that] any nondisclosure or misrepresentation, even if made unknowingly, will void the policy if it pertains to information material to the risk assumed by the insurer"). Except for a single sentence baldly asserting that the "importance of a signed rental agreement is obvious," R. 47 at 9, Markel does not argue that any of the warranties it relies on to argue that the policy is void are material. It is not the Court's responsibility to make a party's argument for it. *See Costello v. Grundon,* 651 F.3d 614, 639 n.7 (7th Cir. 2011) (quoting *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this Court to make arguments for the parties.")). Thus, the Court will not make the alternative holding that Vantage's breaches of the warranties in the policy Markel has identified serve to void the policy and absolve Markel of its duty to defend.

## III. Policy Exclusions

Markel also argues that policy exclusions K and O apply to destroy Markel's duty to defend the underlying state action. Exclusion K provides that Markel will

not insure liabilities "caused by the use of [the boat] while it is being used to carry passengers for hire." Exclusion O provides that Markel will not insure liabilities "caused by [Vantage] when not in the course of [Vantage's] rental business operation, and/or after your normal business hours." Markel has not cited any evidence to support these arguments. Thus, summary judgment in Markel's favor based on exclusions K or O is not proper.

## Conclusion

For the foregoing reasons, Markel's motion for summary judgment, R. 45, is granted, and the Court finds that Markel does not have a duty to defend Vantage in the underlying state court action against Garland's estate.

ENTERED

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: January 26, 2016